IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| ROBIN ALFREDA COLE, | ) | C/A No. 2:15-CV-04614-PMD-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B). The Plaintiff, Robin Alfreda Cole, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons stated herein, the undersigned recommends that the Commissioner's findings be reversed and remanded.

## **ADMINISTRATIVE PROCEEDINGS**

The Plaintiff applied for DIB on May 16, 2012, and was 43 years old on her alleged disability onset date of August 1, 2010. (R. 155.) The Plaintiff claimed disability due to depression, stenosis, spondylosis, degenerative disc disease ("DDD"), severe headaches, numbness in legs, protruding disc in lower back/sacral, fusing in thoracic spine, and fusion in cervical neck area. (R. 178.) The Plaintiff's application for DIB was denied initially and on

1

reconsideration. (R. 89-92, 96-97.) The Plaintiff requested a hearing, which was held on May 22, 2014, before an Administrative Law Judge ("ALJ"). The ALJ issued his decision on August June 17, 2014, and it is now the Commissioner's final decision for purposes of judicial review. (R. 16-24.) The Plaintiff filed an appeal to the Appeals Council which was denied review. (R. 5-10.) In making the determination that the Plaintiff was not entitled to benefits, the Commissioner adopted the following findings of the ALJ:

> (1)    The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.
>
> (2)    The claimant has not engaged in substantial gainful activity during the period from her alleged onset date of August 1, 2010, through her date last insured of December 31, 2012 (20 CFR 404.1571 *et seq*.).
>
> (3)    Through the date last insured, the claimant had the following severe impairments: obesity, degenerative disc disease, and diabetes (20 CFR 404.1520(c)).
>
> (4)    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she would be limited to no climbing; occasional stooping, crawling, kneeling, crouching; and no exposure to loud noise or work hazards.
>
> (6)    Through the date last insured, the claimant was capable of performing past relevant work as a medical clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> (7)    The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2010, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(g)).

(R. 16-24.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a *prima facie* showing of disability by showing that she is unable to return to her past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *See id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted). Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The Plaintiff asserts the ALJ erred in the following three ways:

1. The ALJ failed to properly assess the treating opinion evidence.

2. The ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

3. The ALJ failed to properly evaluate the credibility of the Plaintiff

(Dkt. No. 12.)

### **Treating Opinion Evidence**

The Plaintiff argues that the ALJ did not properly weigh the opinions of Dr. William E. Prenatt, the Plaintiff's treating family practitioner, and the opinions of the state agency physicians in his residual functional capacity ("RFC") analysis (Dkt. No. 12 at 20-28.) Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545; *see also* 20 C.F.R. § 404.1527. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not

accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. 20 C.F.R. § 404.1527(c)(1)-(5). "A treating physician is entitled to great weight because it reflects a judgment based on continuing observation over a number of years." *Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir. 1986). An ALJ must provide specific and legitimate reasons supported by the record for the weight given to a treating physician's opinion. *See Bishop v. Commissioner of Social Sec.,* 583 Fed. App'x. 65, 67 (4th Cir.2014) ("given the specific and legitimate reasons provided, the ALJ was permitted to reject the treating physician's opinion in its entirety"); *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir.2001) (finding no error in ALJ's decision not to give a treating physician's opinion controlling weight where specific and legitimate grounds were given); *Doyal v. Barnhart,* 331 F.3d 758, 764 (10th Cir. 2003) (holding the ALJ was required to provide specific, legitimate reasons for rejecting treating physician's opinion).

Considering the factors under 20 C.F.R. § 404.1527(c)(1)-(5), Dr. Prenatt's opinions must be examined closely. Dr. Prenatt has been the primary treating physician for the Plaintiff for several years. In determining the Plaintiff's RFC, the ALJ stated that he gave "little weight" to the opinions from treating family practitioner Dr. Prenatt. (R. 23.) In finding the Plaintiff could perform sedentary work[1] with some further limitations, the ALJ stated,

---

[1] Sedentary work is defined in 20 C.F.R. § 404.1567 as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

6

> I have accorded little weight to the medical opinion of Dr. Prenatt, as his medical opinion regarding the claimant's limitations is inconsistent and unsupported by the evidence of record and his clinical findings on examination. Notably, the claimant testified that Dr. Prenatt asked her what she could do while filing [sic] out the statement. Therefore, the statement reflects more of a reflection of the claimant's subjective complaints as opposed to a valid medical opinion.

(R. 23.) The ALJ did not elaborate on how Dr. Prenatt's limitations were inconsistent with the record and his clinical findings.

On June 10, 2013,[2] Dr. Prenatt completed a medical statement regarding physical abilities and limitations and a medical statement regarding spine disorders. He indicated that Cole could stand for 15 minutes at one time, and stand for a total of 2 hours in an 8-hour workday. She could sit for 30 minutes at one time, and sit for 4 hours total in a workday. She could lift 20 pounds occasionally and 5 pounds frequently. She could occasionally bend, stoop, balance, and work around dangerous equipment. Cole needed to elevate her legs on an occasional to frequent basis. She suffered from moderate to severe pain. Objective signs of pain included x-rays, muscle spasms, arthritic changes, nerve/muscle findings, disc abnormality, tenderness to palpation, and limitation of motion. Dr. Prenatt opined that Cole would need frequently unscheduled breaks from routine work to alleviate her pain. She would occasionally or frequently miss work due to pain and would probably be unreliable. Cole had degenerative disc disease, herniated discs of the lumbar spine, left leg pain, walking and numbness, with radicular paresthesia. Cole had neuro-

---

[2] Dr. Prenatt's opinion was completed on June 10, 2013, which was almost six (6) months after the Plaintiff was last insured. The Fourth Circuit has held "that medical opinions rendered after the date last insured may be considered retrospectively where 'the evidence permits an inference of linkage with the claimant's pre-DLI condition.'" *Binnarr v. Colvin*, 164 F. Supp. 3d 788, 792 (D.S.C. 2016) (quoting *Bird v. Commissioner of Social Security Admin.*, 699 F.3d 337, 340–341 (4th Cir.2012)). The Commissioner argues that the ALJ properly gave Dr. Prenatt's opinion little weight, in part, because it was rendered after the last insured date. (Dkt. No. 13 at 4.) The ALJ did not cite the date of the opinion as a reason for giving the opinion little weight. Therefore, this court cannot put words in the ALJ's mouth by determining whether Dr. Prenatt's opinion linked back to the Plaintiff's last insured date.

anatomic distribution of pain, limitation of motion of the spine, motor loss, sensory or reflex loss, positive straight leg raising tests (sitting and supine), and severe burning or painful dysesthesias. She would need to change position more than once every two hours due to lumbar spinal stenosis, pseudoclaudication, chronic non-radicular pain and weakness and an inability to ambulate effectively (R. 366-369).

"[T]he ALJ must state 'specific reasons for the weight given to the treating source's medical opinion,' to enable reviewing bodies to identify clearly the reasons for the ALJ's decision." *Sharp v. Colvin*, 660 F. App'x 251 (4th Cir. 2016) (quoting Social Security Ruling (SSR) 96–2p, 61 Fed. Reg. 34,490, 34,492 (July 2, 1996)). The ALJ may not generally cite to the record to discredit a medical source opinion, but must identify "a particular category of evidence." *Id.* (finding ALJ's analysis was sufficient where "the ALJ did not cite specific pages in the record [but] his explanation relied on and identified a particular category of evidence."). In *Sharpe*, the Fourth Circuit held that the ALJ's citation to an opinion's inconsistency with the treating physician's office notes was sufficient to satisfy SSR 96-2p. *Id.* The *Sharpe* court analyzed the treating physician's practice notes and concluded that substantial evidence supported the ALJ's Decision.

In the case at bar, the ALJ's finding that Dr. Prenatt's limitations were inconsistent with "evidence of record" is not a "specific reason" as required by SSR 96-2p. The ALJ's finding that Dr. Prenatt's limitations were inconsistent with "his clinical findings on examination" does identify a particular category of evidence as required by *Sharpe*. However, this court is unable to determine if the weight given to Dr. Prenatt's opinion is supported by substantial evidence. The court has reviewed Dr. Prenatt's records, which are substantial. (R. 308-316, 349-358, 366-386.) This court does not readily see an inconsistency between Dr. Prenatt's records and his opinion.

8

This court is most troubled, however, with the ALJ's synopsis of the Plaintiff's testimony regarding Dr. Prenatt's opinion. The ALJ stated that the Plaintiff testified that Dr. Prenatt asked the Plaintiff what she could do and then filled out the form containing his opinion accordingly. (R. 23.) The ALJ then concluded that Dr. Prenatt's opinion was merely "the claimant's subjective complaints as opposed to a valid medical opinion." (*Id.*) The ALJ's finding is not an accurate synopsis of the Plaintiff's testimony, and his subsequent conclusion is flawed.

The Plaintiff testified as follows:

ALJ: When he [Dr. Prenatt] completed that form was he asking you what you could and could not do?

CLMT: No, he had me do things in his office to see. He's actually the doctor who referred, who has suggested that I should check out for disability because he didn't think that I would be able to, you know, continue on.

ALJ: So he filled that out in your presence?

CLMT: Yeah, he asked me to do certain things and then wrote, well, I left it there and he wrote his notes and then—

ALJ: I'm a little confused. So when he says you can't sit for more than 15 minutes you sat for more than 15 minutes and then had to get up and then he marked it?

CLMT: No, I gave him the form, explained to what, that we had to have this form completed. He said, okay. He asked me a few questions. I left the form there and, you know, came back and he got it already and mailed it, so.

ATTY: Your Honor, if I might?

ALJ: Sure.

ATTY: Dr. Pernat [sic] you mentioned that he had you do some things where, did he ask you to do particular tests and such as squatting, lifting, flexion—

CLMT: Yes, he asked me how far I could [sic] my head left and right, if I could touch my toes, how far I could stretch down. He helped me get up onto the table, asked me if I could lay down flat, had me grab his hands.

> ATTY: And he actually was performing these things as he was asking you if you could do them, correct?
>
> CLMT: Yeah, he's asking me, you know, he goes, touch this, grab this, you know, try to push me away and things like that.

(R. 56-57.) The Plaintiff repeatedly testified that Dr. Prenatt "had me do things," "asked me to do certain things," "helped me get up on the table, asked me if I could lay down flat, had me grab his hands." The testimony was clear that Dr. Prenatt actually made the Plaitniff perform tasks to evaluate her abilities. To state that Dr. Prenatt only asked the Plaintiff questions and then wrote her answers on the form is a mischaracterization of the testimony and not supported by any evidence in the record.

This court finds that substantial evidence does not support the ALJ's finding the Dr. Prenatt's opinion was entitled to little weight. The only specific reason discussed in any detail by the ALJ was a mischaracterization of the Plaintiff's testimony. The other specific reason simply cited to Dr. Prenatt's "clinical findings on examination," which, upon review, this court does not find constitutes substantial evidence in light of the mischaracterized testimony. Therefore, this court recommends that the ALJ's Decision be reversed and remanded for a new hearing and does not reach the Plaintiff's other assignments of error.[3]

## **RECOMMENDATION**

It is therefore **RECOMMENDED**, for the foregoing reasons, that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for a new hearing consistent with this Report & Recommendation.

---

[3] The only other medical source opinions in the record are from the state agency experts. (R. 23.) The ALJ gave these opinions "little weight because other medical opinions are more consistent with the record as a whole…." This reasoning is not sound as the ALJ gave "little weight" to every opinion in this case.

IT IS SO RECOMMENDED.

January 30, 2017

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

11